United States District Court
Southern District of Texas
**ENTERED**
August 02, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD A DUNSMORE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-132 |
| | § | |
| SCOTT BURROUGHS, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT DEFENDANTS' SUMMARY JUDGMENT MOTION**

Plaintiff Richard A. Dunsmore brought this cause of action in state court on June 4, 2015, against Defendant Scott A. Burroughs, individually and as the Chief of Police of Port Aransas, Texas. Chief Burroughs removed the action to federal court. (D.E. 1). In his amended complaint, Plaintiff names as defendants the City of Port Aransas, Lieutenant Johnson in his official capacity,[1] and Chief Burroughs in his official capacity. (D.E. 55).

Plaintiff is currently housed at the Texas Civil Commitment Center (TCCC) in Littlefield, Texas. Pending before the Court is Defendants' Motion for Summary Judgment. (D.E. 113). For the reasons discussed herein, it is respectfully recommended that their summary judgment motion be GRANTED in its entirety.

---

[1] The undersigned was informed earlier in this case that Defendant Johnson has passed away.

## I.     JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

## II.    BACKGROUND

### A.   Procedural History

Plaintiff originally filed suit in state court on June 4, 2015 against Chief Burroughs in his individual and official capacity, seeking declaratory, injunctive, and monetary relief.  (D.E. 1-7).  On April 25, 2016, Chief Burroughs removed this action to federal court.  (D.E. 1).  Plaintiff moved to remand this action back to state court, but his motion was denied on July 21, 2016.  (D.E. 36).

On November 9, 2016, the undersigned ordered Plaintiff to file a more definite statement.  (D.E. 50)  Thereafter, on December 5, 2016, Plaintiff filed his amended complaint, naming as defendants the City of Port Aransas, Lieutenant Johnson in his official capacity, and Defendant Burroughs in his official capacity.  (D.E. 55, p. 1). Lieutenant Johnson was not served with the amended complaint before he passed away. On May 11, 2017, the City of Port Aransas and Chief Burroughs (collectively referred to hereinafter as "Defendants") filed their answer to the amended complaint.  (D.E. 81).

On September 6, 2017, Defendants filed a Motion for Summary Judgment.  (D.E. 113).  The parties have since engaged in a lengthy discovery dispute regarding certain personal property seized by the Port Aransas Police Department (PAPD).  On September 18, 2017, Plaintiff filed a motion to compel Defendants to return this seized property to him, contending that he needed the personal items in order to properly respond to the

summary judgment motion.  (D.E. 114).  Plaintiff included a list of the property items requested sent either to him at his current residence or to Felicia Richardson.  (D.E. 114, pp. 1, 3).

Defendants subsequently advised the Court that, on October 11, 2017, "all of the items seized by the [PAPD] on September 17, 2010" were mailed to Plaintiff or Felicia Dunsmore[2] with some exceptions.  (D.E. 117).  On November 20, 2017, the undersigned denied Plaintiff's motion to compel as moot and directed Plaintiff to file his response to Defendants' Motion for Summary Judgment within thirty days.  (D.E. 120).

On December 7, 2017, Plaintiff advised the Court that Defendants had only submitted one item, which was a computer in "terrible condition" and that no documents, discs, or photographs have been delivered to him.  (D.E. 121).   On January 8, 2018, the undersigned permitted Plaintiff to file a second supplemental motion to compel within fourteen days.  (D.E. 124, p. 3).  Plaintiff responded in a timely fashion by filing an Advisory (D.E. 125), Second Supplemental Motion to Compel (D.E. 126), and Motion for Just Compensation and Costs (D.E. 127).  In his Advisory, Plaintiff stated that a box had arrived at the TCCC "from someone at the [PAPD]."  (D.E. 125).  According to Plaintiff, he had yet to receive any of the items seized by the PAPD and had no record of what was shipped in the box.  (D.E. 125, p. 1).

In his Second Supplemental Motion to Compel, Plaintiff listed the various items seized and represented that such items were vital to his defense of the pending summary judgment motion.  (D.E. 126, pp. 1, 12).  As part of his second supplemental motion,

---

[2] "Felicia Richardson " and "Felicia Dunsmore" appear to be the same individual.

Plaintiff included arguments in response to Defendants' summary judgment motion. (D.E. 126, pp. 2-11). In his Motion for Just Compensation and Costs, Plaintiff contended that the Gateway Computer delivered to Ms. Richardson was destroyed as it "looked like it had been taken apart and put back together again." (D.E. 127, p. 1). Plaintiff further stated that the computer failed to "[b]oot up when plugged in." (D.E. 127, p. 1).

The undersigned entered an Order on April 18, 2018, finding that: (1) Defendants had fully complied with Plaintiff's request for the relevant items seized by the PAPD on September 17, 2010 to be returned to him or his designated representative; and (2) Plaintiff had presented no evidence to demonstrate that the computer delivered to Ms. Richardson had been rendered inoperable while being held at the PAPD. (D.E. 134, pp. 4-5). The undersigned, therefore, denied Plaintiff's Second Supplemental Motion to Compel and Motion for Just Compensation and Costs. (D.E. 134, pp. 4-5). Lastly, the undersigned granted Plaintiff thirty days from the entry date of this Order to file his complete response to Defendants' summary judgment motion. (D.E. 134, p. 5).

On May 14, 2018, Plaintiff advised the Court that Defendants had included marijuana with the box shipped to Plaintiff, making the box "unacceptable for receipt." (D.E. 137). Defendants, in turn, informed the Court in an Advisory that the TCCC had returned the box to the PAPD and that a representative from the PAPD would review the TCCC guidelines before repackaging the items for mailing to Plaintiff on or about June 11, 2018. (D.E. 138). On June 13, 2018, the undersigned ordered Defendants to provide proof by June 20, 2018 that the seized items had been mailed to Plaintiff at his TCCC residence. (D.E. 140, p. 5). The undersigned further directed Plaintiff to file his

complete response to Defendants' summary judgment motion by July 11, 2018.  (D.E. 140, p. 5).

On June 19, 2018, Defendants advised the Court and submitted proof that: (1) two packages were mailed to Plaintiff at his TCCC address, with one package containing CDs and the other package containing various letters, printouts, and photographs; and (2) a box was mailed to Felicia Dunsmore containing a red notebook, a green notebook, a metal can containing jewelry, a personal massager, two cell phones, and an internet access modem for television.  (D.E. 141, p. 1; D.E. 141-1).  Defendants further advised the Court that the PAPD retained two drivers' licenses and four prescription bottles containing pills.  (D.E. 141, p. 2; D.E. 141-1).   On June 29, 2018, Plaintiff submitted his supplemental response to Defendants' summary judgment motion.  (D.E. 143).

### B.   Plaintiff's Original Complaint

In his original complaint, Plaintiff stated that in September 2010 he was living in Port Aransas, Texas, with a roommate when some sort of incident occurred.  (D.E. 1-7, p. 1).  Law enforcement became involved, and a member of the PAPD filed an affidavit for a search warrant which was granted.  (D.E. 1-7, p. 1).  Plaintiff asserts that when law enforcement executed the search warrant, items were seized which were irrelevant to the incident that occurred in Port Aransas, but the items were made available for a proceeding involving sexual misconduct in another jurisdiction.  (D.E. 1-7, p. 1).

Plaintiff further alleged that, based on fabricated and erroneous information provided by two acquaintances, a member of the PAPD made a false or recklessly worded affidavit in order to obtain a warrant to search Plaintiff's property in Port

Aransas, Nueces County, Texas.   (D.E. 1-7, p. 1).  Plaintiff asserts that the language of the warrant was overbroad and authorized seizure of items unrelated to Plaintiff's alleged criminal conduct, resulting in a violation of Plaintiff's Fourth Amendment rights under the Constitution.  (D.E. 1-7, pp. 1-2).  Plaintiff claimed that Chief Burroughs had denied the fact he authorized the search and had refused to return the seized items to Plaintiff.

Plaintiff also alleged that, even though nothing was found that tended to prove the criminal allegations, the PAPD has refused to return items to him that he claims have exculpatory value in a different criminal matter, which he identified as "56909" and "56910."  (D.E. 1-7, p. 1).  Plaintiff seeks return of the seized items.  (D.E. 1-7, p. 2).  In addition, Plaintiff sought $100,000 in damages because he could not use his property to refute and impeach statements and false allegations made against him.   (D.E. 1-7, p. 2).

### C.   Plaintiff's Amended Complaint

In his amended complaint, Plaintiff elaborates on the September 2010 incident. He explains that an allegation was raised that he sexually assaulted a woman named Melissa Manbeavers.  (D.E. 55, p. 1).   When Plaintiff and Manbeavers learned of the allegations, Manbeavers attempted to contact law enforcement "in an attempt to calm the situation."  (D.E. 55, p. 1).  On September 16, 2016, a search warrant was issued by the 148th District Court of Nueces County, Texas, based on an affidavit sworn to on behalf of the PAPD by Lieutenant Johnson.  (D.E. 55, p. 1).  The purpose of the search warrant was to obtain evidence of the alleged sexual assault.  (D.E. 55, p. 1).  Items seized pursuant to the search warrant have not been returned to Plaintiff, even though he was never prosecuted for the alleged sexual assault of Manbeavers.  (D.E. 55, p. 2).

Plaintiff claims that: (1) items seized under the Nueces County search warrant were used against him in connection with an October 8, 2010 hearing in Brazoria County on a motion to adjudicate guilt on two convictions that were obtained against him in July 2008; (2) he was not allowed access to some of the items seized in Nueces County which would have helped him at the 2010 hearing; (3) he "just suffered terrible damages in a [Brazoria County] civil case" because he did not have some of the items seized pursuant to the search warrant;[3] and (4) he needs some of the items seized returned to him to file a state habeas action challenging his 2008 convictions.  (D.E. 55, pp. 2-3, 9).  While somewhat difficult to decipher, Plaintiff also appears to assert a state tort claim of theft against Defendants pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 101.021.  (D.E. 55, p. 8).

## III.   SUMMARY JUDGMENT EVIDENCE

Defendants offer the following summary judgment evidence:

Exh. 1:     Affidavit of Counsel (D.E. 113-1).

Exh. 2:     Plaintiff's Original Complaint and attached exhibits (D.E. 113).

Exh. 3:     PAPD Incident Report (D.E. 113-3).

Exh. 4:     Letter dated June 11, 2015 from Plaintiff to Chief Burroughs (D.E. 113-4).

Exh. 5:     Affidavit for Search Warrant (D.E. 113-5).

Exh. 6:     Search and Seizure Warrant (D.E. 113-6).

---

[3] Plaintiff identifies the civil case as "Civil Case 84023-CV" filed in Brazoria County, Texas, but does not further describe the case.

Exh. 7:        Officer's Return and Inventory (D.E. 113-7).

Exh. 8:        Affidavit of James Craven (D.E. 113-8).

Plaintiff attached to his initial response to Defendants' summary judgment motion an inventory list of the items (Exh. A) seized by the PAPD.  (D.E. 126, p. 14).  He attached no summary judgment evidence to his supplemental response.  Plaintiff's verified complaints, nevertheless, may serve as competent summary judgment evidence. *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017).  Attached to Plaintiff's amended complaint are the following: (1) Search and Seizure Warrant (Exhs. 1 and 2); (2) letter dated May 21, 2014 from Lieutenant Johnson to Plaintiff (Ex. 3); and (3) letter dated May 7, 2015 from Nueces County District Clerk Patsy Perez to Plaintiff (Exh. 4).

The competent summary judgment evidence establishes the following.  In July 2008, Plaintiff pleaded guilty in Brazoria County, Texas to convictions for sexual assault and attempted sexual assault and was placed on ten years' deferred adjudication community supervision for each offense.  *Dunsmore v. State*, Nos. 01-10-00981-CR and 01-10-00982-CR, 2012 WL 1249418, at *1 (Tex. App. –Houston [1st Dist.] 2012, pet. ref'd).[4],[5]  Thereafter, in September 2010, Plaintiff resided at 1112 South Eleventh Street

---

[4] A court may *sua sponte* take judicial notice of records in related cases, as long as it judicially notices only those adjudicative facts that cannot reasonably be questioned.  *Moore v. Estelle*, 526 F.2d 690, 694 (5th Cir. 1976); *In re Base Holdings, LLC*, No. 3:13-CV-1584-D, 2014 WL 895403 at n. 5 (N.D. Tex. Mar. 5, 2014).  *See also In re Moity*, 320 F. App'x 244, 249 (5th Cir. 2009) ("One court may take judicial notice of another court's judicial actions.").

[5] These are the cases Plaintiff refers to as "56909" and "56910," which were their trial court case numbers.

in Port Aransas, Texas.  (D.E. 113-2, p. 1).  At that time, Manbeavers moved into a room at Plaintiff's house.  (D.E. 113-2, pp. 5-7).

On September 5, 2010, Manbeavers signed an agreement labeled as a "Posique Cohabitational Living Hold Harmless Agreement and Release, between [Plaintiff] and [Manbeavers] for their living arrangement and social involvement in 2010."  (D.E. 113-2, pp. 5-6).[6]  This agreement was not signed by Plaintiff.  Manbeavers agreed "not to sue or to otherwise not legally involve either civilly or criminally Plaintiff from "all liability, claims, demands, criminal or civil complaint for causes of action and causes of action whatsoever" in connection with their living arrangement.   (D.E. 113-2, p. 5).  Manbeavers's "implied consent to interpersonal activities and involvements" is also affirmed in this agreement.  (D.E. 113-2, p. 6).

On September 16, 2010, a magistrate for Nueces County, Texas, issued a Search and Seizure Warrant with respect to Plaintiff's residence based on the affidavit testimony of PAPD Lieutenant Johnson.  (D.E. 113-5 and 113-6).   The warrant authorized a search of Plaintiff's residence and seizure of specific items in Plaintiff's residence, based on the following affidavit testimony of Lieutenant Johnson:

(1)    on September 14, 2010, Manbeavers reported to police that Plaintiff had sexually assaulted her (D.E. 113-5, p. 2);

(2)    Manbeavers specifically informed Port Aransas Police Detective Jay Daniel Hinojosa that, on or about September 12, 2010, Plaintiff drugged her without her consent or knowledge through food he had prepared for her (D.E. 113-5, p. 3);

---

[6]

(3)     after consuming the meal prepared for her by Plaintiff, Manbeavers had no recollection or memory of the events until she awoke the next day wearing different clothes (D.E. 113-5, p. 3);

(4)     a caregiver for Plaintiff's mother told Manbeavers on September 14, 2010, that she had seen pill bottles in Plaintiff's kitchen and believed Plaintiff "had drugged and raped other girls" (D.E. 113-5, p. 4);

(5)     on September 15, 2010, Detective Hinojosa escorted Manbeavers to Doctors Regional Hospital in Corpus Christi, Texas for an examination by a Sexual Assault Nurse Examiner (SANE) (D.E. 113-5, p. 4);

(6)     the examination was negative for trauma or spermatozoa.  (D.E. 113-5, p. 4).  Laboratory tests were positive for Benzodiazepine (Xanax), which Manbeavers denied knowingly consuming (D.E. 113-5, p. 4);

(7)     at the time of the September 2010 events, Plaintiff had already been convicted of sexual offenses in 2008 in Brazoria County and is a registered sex offender (D.E. 113-5, p. 4);

(8)     similar to the September 2010 incident, the sexual assault victim in Brazoria County was staying in a separate bedroom in Plaintiff's home (D.E. 113-5, p. 4);

(9)     three months before the September 2010 events, the PAPD investigated an incident where Plaintiff was treated at an Aransas Pass hospital for dizziness and intoxication (D.E. 113-5, p. 5); and

(10)     a woman told the attending nurse that Plaintiff had placed an unknown substance in the drink but that she had switched her drink with Plaintiff's drink (D.E.113-5, p. 5).

Based on Lieutenant Johnson's statements, the Nueces County Magistrate Judge authorized a search of Plaintiff's residence and seizure of the following: (1) items proving that that the residence was under Plaintiff's control: (2) correspondence to prove or disprove the allegation of sexual assault; (3) bedding items possibly containing evidence that may tend to prove or disprove the allegation of sexual assault; (4) condoms or other such items possibly containing evidence that may tend to prove or disprove the

allegation of sexual assault; (5) medications, pills, or other chemical substances that when used alone or in combination may cause drowsiness or sleep; (6) medications, pills, or other chemical substances that when used alone or in combination may cause a loss or reduction of memory; (7) cell phones or other similar devices capable of storing digital images or tests; (8) computer hardware, software, or other related items which can collect, conceal, or transmit data or images; and (9) other items, such as cameras, computer files, or photographs, that may contain evidence tending to prove or disprove the allegation of sexual assault.  (D.E. 113-5, pp. 5-6; D.E. 113-6).

The search and seizure warrant was executed on September 17, 2010.  (D.E. 113-7).  The PAPD seized 33 items from Plaintiff's residence pursuant to the search and seizure warrant, including computers, photographs, documents, letters, medications, drivers licenses, cell phones, computer accessories, jewelry, pornographic magazines, and a shot glass containing 0.15 grams of marijuana.  (D.E. 113-7).  Until recently, all of the seized property remained in the custody of the PAPD.  (D.E. 113-8).

On October 8, 2010, Plaintiff attended a hearing on a motion to adjudicate guilt on the 2008 Brazoria County convictions.  *Dunsmore*, 2012 WL 1249418, at *1  *Id.*  In May 2010, the State moved to adjudicate guilt, alleging that Plaintiff had violated the terms of his community supervision.  Plaintiff responded by filing a motion to withdraw his earlier guilty pleas.  At the October 8, 2010 hearing, the trial court denied the motion to withdraw the pleas, adjudicated guilt, and assessed punishment at two seven-year terms of incarceration.  *Id.*

In a letter dated May 21, 2014, Lieutenant Johnson informed Plaintiff that he could not return any documents to him that had been seized in September, 2010.  (D.E. 55, p. 13).  Lieutenant Johnson stated, however, that he photocopied all the documents seized from Plaintiff's wallet during the execution of the search warrant and mailed the photocopies to Plaintiff.  (D.E. 55, p. 13).

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  *Id.*  Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on

hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).   Unauthenticated and unverified documents do not constitute proper summary judgment evidence.   *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  *Caboni*, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).  When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law.  *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material

fact concerning the reasonableness of the official's conduct.  *Bazan v. Hidalgo County*, 46 F.3d 481, 490 (5th Cir. 2001).

## V.   DISCUSSION

### A.   Section 1983 Claims

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

Federal civil rights actions instituted in Texas, such as those brought pursuant to § 1983, are deemed analogous to personal injury claims, and, therefore, the applicable limitations period is the two years fixed by Tex. Civ. Prac. & Rem. Code § 16.003(a). *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).  Accrual of a § 1983 claim is governed by federal law.  *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).  A cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998).

### *(1)   Fourth Amendment Claims*

Plaintiff primarily claims in this action that his personal property was unlawfully seized following the issuance of the search and seizure warrant executed by the Nueces

County Magistrate Judge against him on September 16, 2010. Specifically, Plaintiff asserts that: (1) the search and seizure warrant was based on fabricated and erroneous information; and (2) Lieutenant Johnson of the PAPD prepared a false and recklessly-worded affidavit to order to obtain the warrants to search Plaintiff's property. Plaintiff further claims that the PAPD has improperly retained the seized items even though they did not tend to prove any criminal allegations, in violation of his Fourth Amendment rights.

## Timeliness

Defendants contend that Plaintiff's Fourth Amendment claims are barred by the running of the applicable two-year limitations' period. (D.E. 113, pp. 25-26). The undersigned agrees that Plaintiff's Fourth Amendment claims challenging the search of his residence and seizure of his personal items are untimely.

The competent summary judgment evidence establishes that the search and seizure of Plaintiff's residence occurred on September 17, 2010. Plaintiff states in his original complaint that the items seized on September 17, 2010 were made available one month later at a hearing in Brazoria County where Plaintiff was adjudicated guilty on two convictions previously deferred. At the very latest, Plaintiff knew or had reason to know of the injuries arising from the search of his residence and seizure of personal items by the time of the hearing conducted in Brazoria County in October, 2010.

Plaintiff filed his original complaint in state court on June 5, 2015, well after the expiration of the applicable two-year limitations' period. Thus, when viewing the competent summary judgment in a light most favorable to Plaintiff, no genuine issues of

material fact exist as to whether Plaintiff's Fourth Amendment claims challenging the search and seizure on September 17, 2010 are untimely.

## Merits of Plaintiff's Fourth Amendment Claims

Even if Plaintiff's Fourth Amendment claims had been timely filed, the undersigned concludes that such claims are without merit.  In their summary judgment motion, Defendants contend that: (1) the personal property was lawfully seized pursuant to the September 16, 2010 search and seizure warrant; (2) Texas statutes permitted the PAPD to retain the seized property until a proper court order is issued; and (3) Plaintiff's challenge to the sufficiency of the evidence to constitute probable cause is not properly advanced in a federal civil rights action.  (D.E. 113, pp. 10-13).

Plaintiff maintains in their response to the summary judgment motion that the evidence seized from his residence: (1) "was way beyond the scope of the [s]earch [w]arrant;" and (2) was improperly retained even after Manbeavers admitted to no crime being committed by Plaintiff.  (D.E. 126, pp. 5, 8-9).  According to Plaintiff, Defendants knew that the information upon which they were basing the search warrant was false.  (D.E. 143, p. 2).  Plaintiff further contends that, even if the search warrant was valid, Defendants undertook an impermissible fishing expedition.  (D.E. 143, p. 2).  Lastly, Plaintiff contends that Defendants illegally utilized and retained his seized property in a direct attempt to violate Plaintiff's rights.  (D.E. 143, p. 2).

The Fourth Amendment protects citizens against unreasonable searches and seizures by law enforcement officers.  *Creamer v. Potter*, 754 F.2d 1311, 1318 (5th Cir. 1985).  A valid search warrant may be issued only upon a finding of probable cause and

the information necessary to show probable cause must be contained within a written affidavit given under oath.  *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). Whether probable cause exists is analyzed looking at the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230–231 (1983).

A probable cause determination for the issuance of a search warrant is a "'practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002) (quoting *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir.1994)).   A police officer seeking the issuance of a search warrant must present an affidavit containing facts sufficient to "'provide the magistrate with a substantial basis for determining the existence of probable cause.'"  *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir.2006) (quoting *Gates*, 462 U.S. at 239).   A magistrate's determination is entitled to deference by reviewing courts.  *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007).

In analyzing a magistrate's decision to issue a search warrant, a reviewing court "start[s] with the general proposition that a search warrant, unlike an arrest warrant, may issue, without the slightest clue to the identity of the criminal, if there is probable cause to believe that the fruits, instrumentalities, or evidence of criminal activity are located at the place to be searched."  *United States v. Webster*, 750 F.2d 307, 318 (5th Cir. 1984).   A Fourth Amendment violation may be established if the defendant proves, by a preponderance of the evidence, that the supporting affidavit for a search warrant contains

a false, material statement made intentionally or with reckless disregard for the truth. *United States v. Alvarez*, 127 F.3d 372, 373–74 (5th Cir. 1997).

"As a general rule, only items that are described in a search warrant may be seized in accordance with Fourth Amendment concerns." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). One exception to the general rule exists "where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). "Another exception arises when the seized property 'has a sufficient nexus to the crime being investigated.'" *Landry v. Cain*, No. 05-5523, 2007 WL 4292882, at *11 (E.D. La. Dec. 6, 2007) (quoting *Garland*, 717 F.2d at 206).

In this case, the competent summary judgment evidence establishes that Lieutenant Johnson provided the magistrate judge with sufficient facts in his affidavit to demonstrate the existence of probable cause to search Plaintiff's residence. Indeed, the affidavit includes facts tending to show that the crime of sexual assault may have been committed at Plaintiff's residence. Other than conclusory assertions, Plaintiff has provided no evidence to show that Lieutenant Johnson's affidavit contained any false or misleading statements. Without presenting such evidence, Plaintiff cannot show that a fact issue exists regarding whether the search warrant was based on false or unreliable information or otherwise show that the Port Aransas police lacked probable cause to search Plaintiff's residence.

A review of the search warrant further includes a detailed description of the items which may be seized as possible evidence of the crime of sexual assault. The PAPD

seized 33 items from Plaintiff's residence pursuant to the search and seizure warrant, including computers, photographs, documents, letters, medications, drivers licenses, cell phones, computer accessories, jewelry, pornographic magazines, and a shot glass containing 0.15 grams of marijuana.  (D.E. 113-7).   Such items seized conformed to the detailed description set forth in the search warrant or were otherwise of an incriminatory nature.  When viewing the competent summary judgment in a light most favorable to Plaintiff, Plaintiff has failed to establish a fact issue with respect to his Fourth Amendment violation arising from the search of his residence and seizure of his personal items.

Plaintiff further claims a Fourth Amendment violation based on the PAPD's retention of his seized property for several years, even though nothing was found that tended to prove the criminal allegations arising from the September 2010 incident. According to Plaintiff, the PAPD refused to return items to him that he claims had exculpatory value in connection with his Brazoria County convictions.

While there is no Fifth Circuit authority on the issue, the undersigned has previously held that delays in returning seized property do not violate the Fourth Amendment.  *Reliford v. Craig*, No. 2:16-CV-482, 2017 WL 6372634, at *6 (S.D. Tex. No. 22, 2017).  In addition, as Defendants point out, the PAPD's retention of the seized property was proper pursuant to Texas Code of Criminal Procedure Articles 18.10 and 18.11.  These articles essentially set forth that property, which has been properly seized pursuant to a search warrant, shall be retained until a magistrate judge issues an order returning or releasing the seized property.  Tex. Crim. P. Ann. art. 18.10 and 18.11.  No

state magistrate judge to date has ever issued an order to return the seized property to Plaintiff.   Furthermore, much of the seized property has recently been returned to Plaintiff or Felicia Dunsmore.

Accordingly, when viewing the competent summary judgment in a light most favorable to Plaintiff, Plaintiff has failed to establish a Fourth Amendment violation against Defendants with respect to the PAPD's use and retention of the seized property. The undersigned recommends, therefore, that Defendants' summary judgment motion (D.E. 113) be granted with respect to Plaintiff's Fourth Amendment claims.

### (2)   Remaining § 1983 Claims

In addition to his Fourth Amendment claims, Plaintiff appears to claim that his due process rights and right to access the courts were violated in connection with the PAPD's long-term retention and use of his seized property.   Specifically, Plaintiff asserts that: (1) some of the personal items seized on September 17, 2010 were used against him at a October 8, 2010 hearing in Brazoria County where he was adjudicated guilty on two convictions initially obtained against him in 2008; (2) some of the items seized would have helped him at the 2010 hearing; (3) he lost a civil case in Brazoria County because the items seized were not returned to him; and (4) he needed all of the seized items in order to file a state habeas action challenging his 2008 convictions.

In their summary judgment motion, Defendants initially contend that Plaintiff's due process and denial-of-access-to-courts claims were not fully developed in his amended complaint as Plaintiff's allegations fail to state "who should have done what or when."   (D.E. 113, p. 13).  Contrary to Defendants' contention, however, the undersigned

finds that these claims were alleged and developed sufficiently to state claims against the City of Port Aransas and Chief Burroughs.

### The City of Port Aransas and Chief Burroughs in his Official Capacity

Defendants assert in their summary judgment motion that the City of Port Aransas cannot be held liable on any of Plaintiff's claims as there is no evidence of municipal liability.  Specifically, Defendants contend in their summary judgment motion that: (1) Plaintiff has failed to establish that the alleged violations of his rights were the result of an unconstitutional, policy, practice, or custom of the City of Port Aransas; and (2) no evidence has been presented regarding either an official policy or custom or the persistent practice of an unwritten policy or custom that resulted in the deprivations of Plaintiff's rights.  (D.E. 113, pp. 14-17).

Plaintiff responds that there are several purported deficiencies on in the PAPD's policies regarding "utilization of property stored in the property room and the way property was logged in and out of the property room."  (D.E. 143, p. 4).  According to Plaintiff, PAPD policies have failed to: (1) "outline a use of property continuum;" (2) "list proper property procedures;" (3) failed to incorporate certain "best practices," (4) to mention that the magistrate who signed the warrant must be consulted before property can be removed from the county; and (5) emphasize "the advisability of following proper property procedures.  (D.E. 143, p. 4).  Plaintiff also seeks to hold Defendants liable for their failure to train and supervise the subordinate PAPD officers based on their actions in undertaking fishing expeditions when conducting property searches and moving property around without making entries into the property log record.  (D.E. 143, p. 3).

21 / 32

Plaintiff asserts his claims against the City of Port Aransas and Chief Burroughs in his official capacity.  A suit against Chief Burroughs in his official capacity is effectively a suit against that state official's office, the City of Port Aransas.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  In order to show that the City of Port Aransas was liable for any constitutional violation based on Plaintiff's allegations regarding its retention and/or use of the seized property, Plaintiff must show that any constitutional deprivations were caused by (1) an official policy or custom; (2) promulgated by the municipal policy-maker; (3) that was the moving force behind the violation of his constitutional rights.  *Piotrowski*, 237 F.3d at 578 (citing *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 694 (1978)).  Municipal liability cannot be established on the basis of respondeat superior.  *Monell*, 436 U.S. at 694.  A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it "through some official action or imprimatur."  *Piotrowski*, 237 F.3d at 578.

Official policy can arise in various forms.  It may be a policy statement, ordinance, regulation, or decision that has been officially adopted and promulgated by a policy maker.  *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).  In addition, it may arise in the form of a wide-spread practice that, while unofficial, is "so common and well-settled as to constitute a custom that fairly represents municipal policy.  *Piotrowski*, 237 F.3d at 579 (quoting *Webster,* 735 F.2d at  841).  When a plaintiff alleges that a municipality is liable for a constitutional violation for failure to train officers, liability attaches "[o]nly where the failure to train amounts to deliberate indifference to

the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.

*Id.* at 390-391.  It is not enough to show that a training program has been negligently administered or that an incident could have been avoided if an officer had more or better training. *Id.* at 391.[7]

Plaintiff has not alleged any facts in this case which identify with any particularity a pattern, practice, custom, policy statement, ordinance, regulation or decision.  On the contrary, Plaintiff's allegations regarding deficient policies implemented in the PAPD's property room are statements and conclusions unsupported by any specific facts and evidence.  In addition, Plaintiff has attached no evidence to his summary judgment responses to support his allegation that the City of Aransas Pass had an official policy to retain seized property and then utilize such property in such a deliberate fashion as to deprive individuals of their rights.  Plaintiff further presents no evidence of any wide-spread practice on these matters that, while unofficial, is so common and well-settled as to constitute a custom that fairly represents municipal policy.  *See Johnson v. Deep East Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).

---

[7] As discussed above, Plaintiff's Fourth Amendment claims are subject to dismissal.  Because Plaintiff has failed to demonstrate an underlying Fourth Amendment claim, Defendants cannot be held liable based on any alleged unconstitutional policy or custom. *See Hill v. Carroll County*, 587 F.3d 230, 238 (5th Cir. 2009).

Likewise, Plaintiff offers only conclusory allegations without any evidentiary support that the City of Port Aransas failed to properly train and supervise its employees with regard to the procedures utilized in seizing and retaining an individual's personal property.  Plaintiff wholly fails to demonstrate that PAPD employees were not properly trained and supervised and how such failure amounted to deliberate indifference to Plaintiff's rights.  Because Plaintiff has failed to establish a fact issue with respect to any constitutional claims asserted against the City of Port Aransas and Chief Burroughs in his official capacity, the undersigned recommends that Defendants' summary judgment motion be granted in their favor on these claims.

## Chief Burroughs in his Individual Capacity

Defendants assert that Chief Burroughs is entitled to qualified immunity in his individual capacity with respect to Plaintiff's § 1983 claims.  (D.E. 113, pp. 17-19). Defendants contend that Plaintiff has failed to allege or present any evidence showing that Chief Burroughs acted in any way to violate Plaintiff's constitutional rights.  (D.E. 113, pp. 14-17, 19).  Plaintiff responds that Chief Burroughs is not entitled to immunity of any kind and that Chief Burroughs was aware that his actions violated the Constitution.  (D.E. 126, p. 11; D.E. 143, p. 8).

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the

burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

To discharge this burden, the plaintiff must satisfy a two-prong test." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005). First, he must claim that the defendants committed a constitutional violation under current law. *Id.* (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Id.* While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

Plaintiff appears to claim that Chief Burroughs is liable in his supervisory capacity as police chief. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

deprivation.  *Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (citing *Thompkins*, 828 F.2d at 304).

Plaintiff asserted in his original and amended complaints that Chief Burroughs had denied the fact he authorized the September 2010 search of Plaintiff's residence and had refused to return the seized items to Plaintiff.  Plaintiff, however, has presented no competent summary judgment evidence to show that Chief Burroughs had any personal involvement with regard to the search, retention, and/or use of Plaintiff's seized property. Absent a showing of personal involvement or a sufficient causal connection with wrongful activity, Plaintiff cannot create a fact issue as to whether Chief Burroughs violated his constitutional rights for the purposes of establishing individual liability under § 1983.  Plaintiff, therefore, cannot overcome the defense of qualified immunity.[8]  Thus, it is respectfully recommended that Chief Burroughs be granted summary judgment in his individual capacity as to Plaintiff's § 1983 claims involving the retention and use of the seized property.

### B.  State Law Claims

Defendants contend in their summary judgment motion that this Court has supplemental jurisdiction to rule on Plaintiff's state law tort claims as they are related to the federal claims asserted by Plaintiff and are part of the same case or controversy. (D.E. 113, p. 21).  Defendants further contend that they are immune from state tort

---

[8] Because Plaintiff has failed to state a constitutional violation as to Chief Burroughs, it is unnecessary to examine whether his actions were objectively reasonable.  *See Saucier*, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

liability under the Texas Tort Claims Act (TTCA), which is codified at Tex. Civ. Prac. & Rem. Code § 101.001, *et. seq.*  (D.E. 113, p. 19).

Plaintiff responds that his state law claim involving theft is one brought under the Texas Theft Liability Act (TTLA), Tex. Civ. Prac. & Rem. Code § 134.005, as opposed to a claim brought under the TTCA.  (D.E. 143, p. 5).   Plaintiff contends that "because he is only seeking the statutory damages allowed by statute, the remedy is more akin to a criminal fine than compensatory damages in tort."  (D.E. 143, p. 5).   Thus, Plaintiff contends that the City of Port Aransas is not entitled to immunity.   Plaintiff further appears to raise for the first time in his response a state law claim of fraud against Defendants.  (D.E. 143, pp. 5-6).

### (1)  Supplemental Jurisdiction

Federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Section 1367(a) essentially grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact."  *McKee v. Texas Star Salon, LLC*, No. 3:06-CV-879-BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of state law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

When all federal claims are dismissed prior to trial, the general rule in the Fifth Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3). This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiff's right."). In determining whether to exercise supplemental jurisdiction, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257.

As discussed above, the undersigned recommends that all of Plaintiff's federal claims against Defendants be dismissed at the summary judgment stage. Nevertheless, the undersigned finds that the factors weigh in favor of retaining jurisdiction over

Plaintiff's state law claims.   Such claims arise from the same "common nucleus of operative facts" as his federal claims and can be disposed of promptly.   In addition, none of the parties will be prejudiced by exercising supplemental jurisdiction over Plaintiff's state law claims.

### (2)   Analysis of Plaintiff's State Law Claims

In his amended complaint, Plaintiff asserts that his state law claim of theft against Chief Burroughs arises pursuant to § 101.021 of the TTCA.   (D.E. 55, p. 8).   Plaintiff essentially raises for the first time in his response to the summary judgment motion his TTLA and fraud claims.   Because these claims were raised for the first time in a response to a summary judgment motion, they are not properly before the Court.   *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).

Even assuming Plaintiff successfully raised his TTLA claim before the Court, Defendants are entitled to immunity from suit with respect to such claim.   The TTCA "provides a limited waiver of sovereign and governmental immunity for certain tort claims, allowing suits to be brought against governmental units only in certain, narrowly defined circumstances."   *Williams v. City of Irving, Texas*, No. 3:15-CV-1701, 2017 WL 3822115, at *8 (N.D. Tex. Jul. 14, 2017) (internal quotations and citations omitted). Specifically, the TTCA provides for immunity from suits for intentional torts to governmental employees if the lawsuit (1) is based on conduct within the scope of the defendant's employment with the governmental unit and (2) the lawsuit could have been

brought against the government unit under the TTCA.  Tex. Civ. Prac. & Rem. Code § 101.106(f).

The scope of claims that "could have been brought" under the TTCA is not limited to common law torts.  *See Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 735 (5th Cir. 2010).  Claims fall under the ambit of the TTCA if "(1) they are tort claims, and (2) they do not contain independent waivers of sovereign immunity."  *Id.* at 735–36. Whether a claim sounds in tort "is ordinarily identified by examining the damages alleged: when the damages are purely economic, the claim sounds in contract, but a ... claim alleging damages for death or personal injury sounds in tort."  *Id.* at 736 (quoting *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 705 (Tex. 2008)).

In *Reyes v. City of Austin*, No. 1:15-CV-327, 2017 WL 3470942 (W.D. Tex. Aug. 11, 2017), District Judge Robert Pittman concluded that the plaintiff's TTLA claim fell within the scope of the TTCA.  *Id.* at *12-14.  Judge Pittman explained that it would "be difficult to imagine that the Texas Legislature sought in enacting the TTLA to cut a path around the TTCA's carefully crafted and limited waiver of sovereign immunity for what amounts to a statutory conversion claim—particularly without expressing such an intent." *Id.* at *13.  Thus, according to Judge Pittman, "it would hardly make sense to pass a statute that exposes law enforcement officers to personal liability for their constitutionally permissible seizures of property in performance of their duties."  *Id.* Judge Pittman also recognized that the pairing of statutory damages with actual damages

in the TTLA's remedial scheme[9] "recalls the traditional structure of punitive damages under Texas tort law, which holds that '[r]ecovery of punitive damages requires a finding of an independent tort with accompanying actual damages.'"  *Id.* (quoting *Fed. Exp. Corp. v. Dutschmann, 846 S.W.2d 282, 284 (Tex. 1993)*).

The undersigned agrees with Judge Pittman's conclusions in *Reyes* and finds that Plaintiff's TTLA claim against Chief Burroughs in his official capacity falls within the scope of the TTCA.  Because Plaintiff's allegations involve actions falling within the scope of employment with the City of Port Aransas and "could have been brought under [the TTCA],"[10] Section 101.106(f) provides that Defendants are immune from suit.[11] Indeed, Plaintiff claims sounding in theft or conversion are intentional torts, and the TTCA does not provide any waiver of sovereign immunity for such claims.  *See Robinson v. Scott*, No. 10-16, 158, *2 (Tex.App.-Waco Feb. 28, 2018); *Williams, Texas*, No. 2017 WL 3822115, at *9.  As Defendants are immune to Plaintiff's state law claims under the TTCA, the undersigned respectfully recommends that their summary judgment motion be granted as to Plaintiff's state law claims.[12]

---

[9] The TTLA provides that any person who commits theft is liable to the aggrieved plaintiff in the amount of actual damages and, in addition, further damages up to an amount of $1,000.  Tex. Civ. Prac. & Rem. Code § 134.005.

[10] In this case, Plaintiff actually brought his theft claim under the TTCA in his amended complaint.  It is only in his response to Defendants' summary judgment motion that he asserts such claim arises under the TTLA.

[11] Texas Law also recognizes that a suit against a government employee is a suit against his government employer. *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011).

[12] State law claims of fraud are also considered to be intentional torts.  *See Wilkins v. Nueces County, Texas*, No. 2:14-CV-5, 2014 WL 2779530, at *2 (S.D. Tex. Jun. 19, 2014).  Thus, even if Plaintiff had properly raised his state law claim of fraud in his amended complaint, it would be barred under the TTCA.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendants'
Motion for Summary Judgment (D.E. 113) be GRANTED and that all of Plaintiff's §
1983 and state law claims raised against Defendants be DISMISSED WITH
PREJUDICE.

Respectfully submitted this 2nd day of August, 2018.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to
each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of
the Memorandum and Recommendation, a party may file with the Clerk and serve on the
United States Magistrate Judge and all parties, written objections, pursuant to Fed. R.
Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District
Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions,
and recommendation in a magistrate judge's report and recommendation within
FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon
grounds of plain error, from attacking on appeal the unobjected-to proposed factual
findings and legal conclusions accepted by the district court. *Douglass v. United* Servs.
*Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).